**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| In re:<br><br>RANEE A. BARTOLACCI,<br><br>                Debtor. | Case No. 24-18942-RAM<br><br>Chapter 7 |
| GEORGE L. MILLER, in his capacity as<br>Chapter 7 Trustee for the bankruptcy estate<br>of EAM 40 Meadow Lane LLC,<br><br>                Plaintiff,<br>     v.<br><br>RANEE A. BARTOLACCI,<br><br>                Defendant. | Adv. Pro. No. _____ |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

George L. Miller, the Chapter 7 trustee (the "Delaware Trustee") for the bankruptcy estate of debtor EAM 40 Meadow Lane LLC ("EAM"), in the bankruptcy case styled *In re EAM 40 Meadow Lane LLC*, case number 22-10293 (BLS), pending in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"), by and through his undersigned counsel, hereby files this Complaint against debtor Ranee A. Bartolacci ("Bartolacci" or the "Debtor") to determine the dischargeability of certain debts, and for other relief as requested herein:

## INTRODUCTION[1]

1.      The Delaware Trustee filed suit against Bartolacci earlier this year in the Delaware Bankruptcy Court in connection with the Delaware Trustee's efforts to recover proceeds from the sale of 40 Meadow Lane, which were siphoned off from EAM at the direction of Bartolacci's husband Nir Meir, the manager of EAM's managing member, as part of a fraudulent conveyance scheme (the "Delaware Adversary Proceeding").  The Delaware Trustee seeks to avoid and recover at least $10,587,387.52 in transfers of the Sale Proceeds made to or for the benefit of Bartolacci by EAM, as well as at least $2,200,000.00 in transfers of the Sale Proceeds made to or for the benefit of Ermitage One LLC ("Ermitage"), the entity controlled by Bartolacci and formed for the purpose of concealing and removing EAM's assets, by EAM.  The Delaware Trustee also seeks to pierce the corporate veil of Ermitage to hold Bartolacci accountable for the liabilities of Ermitage, including for the recovery of Sale Proceeds transferred to Ermitage.

2.      Upon the Debtor's bankruptcy filing, the Delaware Adversary Proceeding was stayed. The Delaware Trustee now seeks a determination by this Court that Debtor's obligation to return the fraudulent transfers of Sale Proceeds received by the Debtor and her entity Ermitage are nondischargeable debts owed to the EAM Estate.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b) because this adversary proceeding arises under and in, and is related to, the above-captioned case under title 11 of the United States Code (the "Bankruptcy Code").

4.      This matter is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

---

[1] Any capitalized terms not defined in this section shall have the meanings ascribed to them below.

5.       Venue is appropriate in this district pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

6.       Plaintiff, the Delaware Trustee, is the duly appointed chapter 7 trustee of the bankruptcy estate of EAM (the "EAM Estate").  The Delaware Trustee maintains an office at 8 Penn Center, Suite 950, 1628 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

7.       On April 6, 2022 (the "EAM Petition Date"), EAM filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Delaware Bankruptcy Court.  Also on April 6, 2022, the Delaware Trustee was appointed to serve as the chapter 7 trustee of the EAM Estate.

8.       Defendant Bartolacci is the Debtor in the above-referenced chapter 7 case and an individual residing in the State of Florida.  At all relevant times, Bartolacci was married to Nir Meir.

**FACTUAL BACKGROUND**

**A.       The Formation and Ownership of EAM**

9.       EAM was organized in June 2013 as a limited liability company in the state of Delaware.  Initially, 100% of the ownership interests in EAM were held by HFZ Capital Group LLC ("HFZ Capital"). Nir Meir was employed as the managing director of HFZ Capital and managed the firm's day-to-day operations.

10.      EAM's Corporate Ownership Statement, however, reflects that as of the Petition Date, 95% of the ownership interests of EAM were held by EZL 40 Meadow Lane LLC ("EZL").[2] Upon information and belief, the remaining 5% of the ownership interests of EAM were held by HFZ Capital.  The managing member of EAM is EZL, and the manager of EZL is Nir Meir.

---

[2] EZL is also a debtor in a chapter 7 bankruptcy case pending before the Delaware Bankruptcy Court, styled *In re EZL 40 Meadow Lane LLC*, Case No. 22-10294 (BLS).

LEGAL\74464885\1

11.     Upon information and belief, EAM was organized for the sole purpose of purchasing the real property located at 40 Meadow Lane, Southampton, New York ("40 Meadow Lane").

B.     **The Acquisition and Construction of 40 Meadow Lane**

12.     In or around December 2013, EAM acquired 40 Meadow Lane for a purchase price of $10.5 million.

13.     EAM acquired the property with the purpose of tearing down the existing home and building a new luxury home.  Construction took approximately four years.  Redevelopment of the property was initially delayed due to litigation over the proposed modern design of the new home, which would sit within the Village of Southampton's historical district.

14.     In connection with the construction of the new luxury home, Nir Meir caused EAM to incur significant debts.  Between 2015 and 2019,  EAM borrowed more than $18.35 million from MCAM 40ML Lender LLC, as successor-by-assignment to ConnectOne Bank ("MCAM"), for construction costs.

15.     Upon completion of the construction, Nir Meir, Bartolacci and their family moved into the luxury home and resided there until approximately April 2021.  EAM did not receive any consideration from Nir Meir, Bartolacci or their family for their use of 40 Meadow Lane.

C.     **Nir Meir's Fraudulent Schemes with Respect to HFZ Capital and His Use of EAM to Secure Personal Obligations**

16.     On February 7, 2024, Manhattan District Attorney Alvin L. Bragg, Jr. announced the indictment of HFZ Capital, Nir Meir and others, for allegedly stealing more than $86 million from investors, subcontractors, and New York City through a series of frauds and schemes that began in 2015. The indictments contain allegations of widespread fraud primarily spearheaded by

Nir Meir, as well as allegations that Nir Meir misappropriated investor and lender proceeds to fund his lavish lifestyle.

17.    Upon information and belief, Nir Meir's fraudulent schemes started to unravel in or around 2020 when HFZ Capital defaulted on certain loan obligations in connection with various construction projects.  Certain lenders and investors of HFZ Capital commenced actions to collect on the debts.  Because Nir Meir had personally guaranteed some of HFZ Capital's debt obligations, he was named as a defendant in certain actions.

18.    By way of example, on November 3, 2020, creditor YH Lex Estates LLC ("YH Lex") commenced an action, styled *YH Lex Estates LLC v. HFZ Capital Group LLC, Ziel Feldman and Nir Meir*, Index No. 655980/2020, to compel payment of a debt owed to YH Lex (the "YH Lex Action").

19.    Also around the same time, HFZ Capital's founding principal, Ziel Feldman, apparently discovered that Nir Meir had been misappropriating HFZ Capital's funds for his own benefit and forging certain business records.  Ziel Feldman then fired Nir Meir from HFZ Capital.

20.    Nir Meir's removal from HFZ Capital triggered a dispute over ownership of EAM and 40 Meadow Lane, with HFZ Capital asserting that it possessed an indirect ownership interest in the property by virtue of its minority ownership interest in EAM.  Upon information and belief, on December 29, 2020, HFZ Capital caused EAM to commence an action, styled *EAM 40 Meadow Lane, LLC v. Nir Meir*, Index No. 620169/2020, in the Supreme Court of the State of New York, County of Suffolk, to evict Nir Meir and his family from 40 Meadow Lane.

21.    No longer having access to HFZ Capital's funds, Nir Meir began using EAM's assets as collateral for personal loans.  For example, on or around February 5, 2021, Nir Meir caused EAM to grant to his business associate, Harsh Padia, a mortgage on 40 Meadow Lane to

LEGAL\74464885\1

secure a debt of approximately $8,000,000 that Nir Meir himself – and not EAM – owed to Harsh Padia.

22.     EAM did not receive any consideration in exchange for the mortgage.

**D.     The Sale of 40 Meadow Lane and Initial Fraudulent Transfers of the Sale Proceeds**

23.     By early 2021, creditors were closing in on Nir Meir.  In order to evade his creditors, Nir Meir, with the help of others including Bartolacci, concocted a scheme to sell 40 Meadow Lane, thereby stripping EAM of its principal asset, and hide the sale proceeds from creditors.

24.     On April 5, 2021, Nir Meir caused EAM to sell 40 Meadow Lane together with certain furnishings to a third-party for a total of $44,908,656 (the "Sale Proceeds").  Despite EAM holding title in fee simple to 40 Meadow Lane, EAM received none of the consideration for the sale of the property.

25.     Advantage Title Agency, Inc. (the "Title Company"), at Nir Meir's direction, served as disbursing agent of the Sale Proceeds.  Upon the close of the sale, the Title Company first disbursed a total of $28,836,869.28 to satisfy the outstanding mortgage lien held by MCAM and the alleged mortgage lien of Harsh Padia.

26.     Nir Meir then directed the Title Company to disburse the Sale Proceeds as follows: (i) $500,000.00 to Davidoff Hutcher & Citron LLP ("Davidoff Hutcher"); (ii) $2,000,000 to a JPMorgan Chase Bank, N.A. ("Chase Bank") account ending in -0193 in the name of Ermitage (the "Closing Transfer"); (iii) $10,587,387.52 to a Chase Bank account ending in -5760 in the name of Bartolacci (the "Bartolacci Transfer"); and (iii) $1,628,158.58 to Nir Meir's Chase Bank account ending in -2895.

27.     In sum, the Title Company distributed the proceeds from the sale of 40 Meadow Lane as follows:

**Title Agent Disbursements:**

| | | |
|---|---|---|
| Advantage Title Agency, Inc. | $ | 1,356,240.62 |
| MCAM 40ML Lender, LLC | $ | 22,796,869.28 |
| Rosen Law LLC for the benefit of Harsh Padia | $ | 6,040,000.00 |
| Davidoff Hutcher & Citron LLC | $ | 500,000.00 |
| Ermitage One LLC | $ | 2,000,000.00 |
| Ranee E. Bartolacci | $ | 10,587,387.52 |
| Nir Meir | $ | 1,628,158.58 |
| | **$** | **44,908,656.00** |

28.     The Title Company also held the sum of $200,000 in escrow (the "Holdover Escrow") to secure EAM's post-closing obligation to surrender the property to the third-party purchaser.  On June 1, 2021, Nir Meir directed the Title Company to disburse the amount of the Holdover Escrow to Ermitage's Chase Bank account ending in -0193 (the "Holdover Escrow Transfer" and together with the Closing Transfer, the "Ermitage Transfers").

29.     Again, despite not holding title to 40 Meadow Lane, Bartolacci and Ermitage received $12,787,387.52 from the sale of the property.  Charts reflecting respectfully the Ermitage Transfers and the Bartolacci Transfer are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

        **E.     The Formation of Ermitage**

30.     Upon information and belief, Ermitage was formed for the purpose of concealing and removing EAM's assets from the reach of Nir Meir's creditors.  Bartolacci is the sole member of Ermitage.

31.     Ermitage had been organized by the law firm Davidoff Hutcher as a New York limited liability company on March 26, 2021—just 10 days prior to the sale.  Upon information

and belief, Davidoff Hutcher has served as personal legal counsel to Nir Meir and his family for a number of years.

32.     On July 8, 2021, Davidoff Hutcher organized a second limited liability company by the name Ermitage One LLC in the state of Florida, with a principal address at Davidoff Hutcher's offices at 605 Third Avenue, New York, NY 10158.  The Florida limited liability company was organized just 3 weeks after YH Lex succeeded in obtaining a judgment against Nir Meir for $19,742,959.81 in the YH Lex Action and issued judgment enforcement discovery to Bartolacci.  A true and correct copy of the judgment enforcement discovery issued to Bartolacci is attached hereto as **Exhibit C**.

33.     On July 29, 2021, Bartolacci executed those certain Articles of Merger for Florida Limited Liability Company, thereby merging the New York limited liability company of Ermitage with the Florida limited liability company.  A true and correct copy of the Articles of Merger for Florida Limited Liability Company are attached hereto as **Exhibit D**.

34.     The effect of Bartolacci's actions was to remove Ermitage's assets, including the Ermitage Transfers, outside the jurisdiction of the court presiding over the YH Lex Action.

**F.     The Insider Transfers and the Insiders' Fraudulent Conduct with Respect to the Insider Transfers**

35.     The Title Company transferred a total of $14,415,546.10 as outlined above (the "Insider Transfers") from the Sale Proceeds to Nir Meir, Bartolacci and Ermitage (the "Insiders"). The Insider Transfers occurred within two (2) years of the EAM Petition Date.

36.     The Insider Transfers to the Insiders were made in exchange for less than reasonably equivalent value at a time when EAM was insolvent or became insolvent as a result of the disbursements.

37.     Moreover, Nir Meir authorized and facilitated the aforementioned disbursements in his capacity as the manager of EZL, the managing member of EAM, with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the date the disbursements were made.

38.     More specifically, Nir Meir caused EAM to make the Bartolacci Transfer with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the date the Bartolacci Transfer was made because, among other things:

(a)     The Bartolacci Transfer was for the benefit of Nir Meir, who was an insider of EAM at the time of the Bartolacci Transfer;

(b)     Before the Bartolacci Transfer was made, both Nir Meir and EAM had been sued, and threatened with suit;

(c)     Nir Meir caused the Bartolacci Transfer and the other Insider Transfers to occur at the same time and those transfers collectively constituted a transfer of substantially all EAM's assets;

(d)     EAM received less than reasonably equivalent value in exchange for the Bartolacci Transfer; and

(e)     EAM was insolvent or became insolvent shortly after the Bartolacci Transfer was made.

39.     Nir Meir also caused EAM to make the Ermitage Transfers with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the dates the Ermitage Transfers were made because, among other things:

(f)     The Ermitage Transfers were for the benefit of Nir Meir, who was an insider of EAM at the time of the Ermitage Transfers;

(g)     Before the Ermitage Transfers were made, both Nir Meir and EAM had been sued, and threatened with suit;

(h)     Nir Meir caused the Ermitage Transfers and the other Insider Transfers to occur at approximately the same time and those transfers collectively constituted a transfer of substantially all EAM's assets;

(i)     EAM received less than reasonably equivalent value in exchange for the Ermitage Transfers; and

(j)     EAM was insolvent or became insolvent shortly after the Ermitage Transfers were made.

40.     Bartolacci actively and knowingly participated in her husband Nir Meir's fraudulent conveyance scheme.  For example, she received at least $10,587,387.52 from the sale of 40 Meadow Lane despite not being a creditor of EAM and despite holding no ownership interest in the property.

41.     Bartolacci also exercised complete domination and control over Ermitage, which received at least $2,200,000 from the sale of 40 Meadow Lane despite not being a creditor of EAM and despite holding no ownership interest in the property.

42.     In addition, after being served with judgment enforcement discovery by YH Lex, Bartolacci executed the documents necessary to remove Ermitage's assets, including the Ermitage Transfers, outside the jurisdiction of the court presiding over the YH Action.

### G.    Bartolacci Acted as the Alter Ego of Ermitage

43.     Bartolacci used her domination and control over Ermitage to assist her husband Nir Meir in his scheme to defraud creditors by stripping EAM of its principal asset, and hiding the Sale Proceeds from creditors.

44.     Upon information and belief, Ermitage was formed for the purpose of concealing and removing EAM's assets from the reach of Nir Meir's creditors.

45.     As the sole member of Ermitage, Bartolacci exercised complete domination and control over Ermitage with respect to the Insider Transfers and subsequent transfers made by Ermitage.

46.     Ermitage has no business operations of its own.  Bartolacci used Ermitage's bank accounts as her personal piggy bank – transferring funds in and out of Ermitage for personal

purposes rather than corporate purposes.  Bartolacci also directed Ermitage to pay her personal

debts, such as school tuition for her children and for her use of private jet services.

47.     Moreover, upon information and belief, Ermitage does not observe corporate

formalities such as maintaining corporate records and filing annual reports with the State of

Florida.

48.     Also, upon information and belief, at the time of the Insider Transfers, Ermitage

had unreasonably small capital to pay its debts, if any, as they came due.

49.     Accordingly, Bartolacci is accountable for the liabilities of Ermitage, and the

Delaware Trustee is entitled to recover from Bartolacci the avoided Ermitage Transfers or the

value thereof, for the benefit of EAM's Estate.

**H.     Financial Condition of EAM**

50.     As a result of the sale of 40 Meadow Lane and the aforesaid disbursements of all

the Sale Proceeds, EAM was left as an empty shell.

51.     Nir Meir knew or should have known that selling 40 Meadow Lane and transferring

the Sale Proceeds away from EAM, including to the Insiders, would leave EAM with unreasonably

small capital to pay its debts as they came due.

<u>**COUNT I**</u>
**(11 U.S.C. § 523(a)(2)(A) – Bartolacci Transfer)**

52.     The Delaware Trustee hereby re-alleges and incorporates the allegations set forth

in paragraphs 1 through 51 above as if fully set forth herein.

53.     By actively and knowingly participating in her husband's scheme to sell 40

Meadow Lane, thereby stripping EAM of its principal asset, and hide the Sale Proceeds from

creditors, the Debtor obtained the Bartolacci Transfer from EAM by actual fraud.

11

54.     The Debtor's husband, Nir Meir, caused EAM to make the Bartolacci Transfer with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the date the Bartolacci Transfer was made because, among other things:

(a)     The Bartolacci Transfer was for the benefit of Nir Meir, who was an insider of EAM at the time of the Bartolacci Transfer;

(b)     Before the Bartolacci Transfer was made, both Nir Meir and EAM had been sued, and threatened with suit;

(c)     Nir Meir caused the Bartolacci Transfer and the other Insider Transfers to occur at the same time and those transfers collectively constituted a transfer of substantially all EAM's assets;

(d)     EAM received less than reasonably equivalent value in exchange for the Bartolacci Transfer; and

(e)     EAM was insolvent or became insolvent shortly after the Bartolacci Transfer was made.

55.     By reason of the foregoing, the Bartolacci Transfer is avoidable by the Delaware Trustee pursuant to 11 U.S.C. § 548(a)(1)(A).

56.     Furthermore, EAM received less than reasonably equivalent value in exchange for the Bartolacci Transfer.

57.     As more particularly set forth above, the Bartolacci Transfer was made at a time when: (i) EAM was insolvent or rendered insolvent as a result of such transfer, (ii) EAM had unreasonably small capital, and/or (iii) EAM had incurred or intended to incur debts that it would not be able to pay as they became due.

58.     Accordingly, the Bartolacci Transfer is also avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

59.     EAM was damaged by the Debtor's fraudulent actions because EAM received none of the consideration for the sale of the property despite EAM holding title in fee simple to 40 Meadow Lane.

60.    Accordingly, the Delaware Trustee seeks a determination that the Bartolacci Transfer made to the Debtor by EAM as part of the fraudulent conveyance scheme be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## COUNT II
### (11 U.S.C. § 523(a)(2)(A) – Ermitage Transfers)

61.    The Delaware Trustee hereby re-alleges and incorporates the allegations set forth in paragraphs 1 through 51 above as if fully set forth herein.

62.    The Debtor is also liable to EAM for the Ermitage Transfers.

63.    The Debtor exercised complete domination and control over Ermitage with respect to the Insider Transfers and subsequent transfers made by Ermitage.

64.    The Debtor is the sole member of Ermitage.

65.    Upon information and belief, Ermitage does not observe corporate formalities such as maintaining corporate records and filing annual reports with the State of Florida.

66.    Upon information and belief, at the time of the Insider Transfers, Ermitage had unreasonably small capital to pay its debts, if any, as they came due.

67.    Ermitage has no business operations of its own, and the Debtor transferred funds in and out of Ermitage for personal purposes rather than corporate purposes.  The Debtor also directed Ermitage to pay her personal debts, such as school tuition for her children and for her use of private jet services.

68.    Upon information and belief, Ermitage was formed for the purpose of concealing and removing EAM's assets from the reach of creditors.

69.    The Debtor used her domination and control over Ermitage to assist her husband Nir Meir in his scheme to defraud creditors by stripping EAM of its principal asset, and hiding the sale proceeds from creditors.

13

70.     Accordingly, the Debtor is accountable for the liabilities of Ermitage, including the Ermitage Transfers.

71.     Furthermore, as a result of the Debtor's active and knowing participation in her husband's scheme to sell 40 Meadow Lane, thereby stripping EAM of its principal asset, and hide the Sale Proceeds from creditors, Ermitage obtained the Ermitage Transfers from EAM by actual fraud.

72.     The Debtor's husband, Nir Meir, caused EAM to make the Ermitage Transfers with the actual intent to hinder, delay, or defraud one or more entities to which EAM was or became indebted on or after the dates the Ermitage Transfers were made because, among other things:

> (a)     The Ermitage Transfers were for the benefit of Nir Meir, who was an insider of EAM at the time of the Ermitage Transfers;
>
> (b)     Before the Ermitage Transfers were made, both Nir Meir and EAM had been sued, and threatened with suit;
>
> (c)     Nir Meir caused the Ermitage Transfers and the other Insider Transfers to occur at approximately the same time and those transfers collectively constituted a transfer of substantially all EAM's assets;
>
> (d)     EAM received less than reasonably equivalent value in exchange for the Ermitage Transfers; and
>
> (e)     EAM was insolvent or became insolvent shortly after the Ermitage Transfers were made.

73.     By reason of the foregoing, the Ermitage Transfers are avoidable by the Delaware Trustee pursuant to 11 U.S.C. § 548(a)(1)(A).

74.     Furthermore, EAM received less than reasonably equivalent value in exchange for the Ermitage Transfers.

75.     As more particularly set forth above, the Ermitage Transfers were made at a time when: (i) EAM was insolvent or rendered insolvent as a result of such transfers, (ii) EAM had

14

unreasonably small capital, and/or (iii) EAM had incurred or intended to incur debts that it would not be able to pay as they became due.

76.     Accordingly, the Ermitage Transfers are also avoidable pursuant to 11 U.S.C. § 548(a)(1)(B)

77.     EAM was damaged by the Debtor's fraudulent actions because EAM received none of the consideration for the sale of the property despite EAM holding title in fee simple to 40 Meadow Lane.

78.     Accordingly, the Delaware Trustee seeks a determination that the Ermitage Transfers made to Ermitage by EAM as part of the fraudulent conveyance scheme be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Debtor granting the following relief:

A.     On Count I of the Complaint, judgment in favor of the Delaware Trustee and against the Debtor, determining that the amount of the Bartolacci Transfer made to the Debtor by EAM as part of the fraudulent conveyance scheme be deemed a non-dischargeable debt as to the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A); and

B.     On Count II of the Complaint, judgment in favor of the Delaware Trustee and against the Debtor, determining that the amounts of the Ermitage Transfers made to Ermitage by EAM as part of the fraudulent conveyance scheme be deemed a non-dischargeable debt as to the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A).

Date:  December 9, 2024          COZEN O'CONNOR


By:    */s/ Nestor C. Bustamante, IV*
       Nestor C. Bustamante, IV
       Southeast Financial Center
       200 South Biscayne Blvd, Suite 3000
       Miami, FL 33131
       Tel: (305) 397-0798
       nbustamante@cozen.com

       John T. Carroll, III (*pro hac vice forthcoming*)
       Simon E. Fraser (*pro hac vice forthcoming*)
       1201 North Market Street, Suite 1001
       Wilmington, DE  19801
       Tel: (302) 295-2000
       jcarroll@cozen.com
       sfraser@cozen.com

       Christina M. Sanfelippo (*pro hac vice forthcoming*)
       123 North Wacker Drive, Suite 1800
       Chicago, IL 60606
       Tel: (312) 382-3100
       csanfelippo@cozen.com

       *Counsel for George L. Miller, Delaware Trustee*

16

# **Exhibit A**

**EAM 40 Meadow Lane LLC**
**Transfers to Ermitage One LLC**
**Exhibit A**

| Transfer Date | Transfer Method | Transfer Amount | Transferee | Tranferee Account | Description |
|---|---|---|---|---|---|
| 4/5/2021 | Wire | $ 2,000,000.00 | Ermitage One LLC | JPMorgan Chase Bank, N.A. Account #0193 | Transfer from Advantage Title Agency, Inc. sourced from EAM Sale Proceeds of 40 Meadow Lane property |
| 6/1/2021 | Wire | $ 200,000.00 | Ermitage One LLC | JPMorgan Chase Bank, N.A. Account #0193 | Transfer from Advantage Title Agency, Inc. sourced from EAM Sale Proceeds of 40 Meadow Lane property |
| **Total Transfers** | | **$ 2,200,000.00** | | | |

# **Exhibit B**

**EAM 40 Meadow Lane LLC**
**Transfers to Ranee A. Bartolacci**
**Exhibit B**

| Transfer Date | Transfer Method | Transfer Amount | Transferee | Tranferee Account | Description |
|---|---|---|---|---|---|
| 4/5/2021 | Wire | $  10,587,387.52 | Ranee A. Bartolacci | JPMorgan Chase Bank, N.A. Account #5760 | Transfer from Advantage Title Agency, Inc. sourced from EAM Sale Proceeds of 40 Meadow Lane property |

# **Exhibit C**

L210003l5329

_____
(Requestor's Name)

_____
(Address)

_____
(Address)

_____
(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

_____
(Business Entity Name)

_____
(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only



000369899600



FILED
2021 JUL 29 AM 8: 50
SECRETARY OF STATE
TALLAHASSEE, FL

RECEIVED
2021 JUL 29 PM 3: 52
TALLAHASSEE, FLORIDA

CORPORATION SERVICE COMPANY
1201 Hays Street
Tallhassee, FL  32301
Phone: 850-558-1500

ACCOUNT NO.   :  I20000000195

REFERENCE  :  934743 ____ 4321898

AUTHORIZATION  :

COST LIMIT  :  $ 50.00

--------------------------------------------------------------------

ORDER DATE :  July 29, 2021

ORDER TIME :  12:50 PM

ORDER NO.  :  934743-005

CUSTOMER NO:   4321898

--------------------------------------------------------------------

<u>ARTICLES OF MERGER</u>

ERMITAGE ONE LLC

INTO

ERMITAGE ONE LLC

PLEASE RETURN THE FOLLOWING AS PROOF OF FILING:

_____  CERTIFIED COPY
<u>XX</u>_____  PLAIN STAMPED COPY

CONTACT PERSON:  Alexxis Weiland

EXAMINER'S INITIALS:  _____

# COVER LETTER

**TO:**   Amendment Section
Division of Corporations

**SUBJECT:** Ermitage One LLC
_____
Name of Surviving Party

The enclosed Certificate of Merger and fee(s) are submitted for filing.

Please return all correspondence concerning this matter to:

Lucille Iovino
_____
Contact Person

Davidoff, Hutcher & Citron LLP
_____
Firm/Company

605 Third Avenue
_____
Address

New York, New York  10158
_____
City, State and Zip Code

li@dhclegal.com
_____
E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Howard Presant                                646        428-3282
_____ at (_____)_____
Name of Contact Person        Area Code    Daytime Telephone Number

☐      Certified copy (optional) $30.00

**STREET ADDRESS:**                    **MAILING ADDRESS:**
Amendment Section                      Amendment Section
Division of Corporations               Division of Corporations
Clifton Building                       P. O. Box 6327
2661 Executive Center Circle           Tallahassee, FL  32314
Tallahassee, FL  32301

CR2E080 (2/20)

**Articles of Merger**
**For**
**Florida Limited Liability Company**

The following Articles of Merger is submitted to merge the following Florida Limited Liability Company(ies) in accordance with s. 605.1025, Florida Statutes.

**FIRST:** The exact name, form/entity type, and jurisdiction for each **merging** party are as follows:

| Name | Jurisdiction | Form/Entity Type |
|------|--------------|------------------|
| Ermitage One LLC | NY | LLC |
| | | |
| | | |
| | | |

**SECOND:** The exact name, form/entity type, and jurisdiction of the **surviving** party are as follows:

| Name | Jurisdiction | Form/Entity Type |
|------|--------------|------------------|
| Ermitage One LLC | FL | LLC |

**THIRD:** The merger was approved by each domestic merging entity that is a limited liability company in accordance with ss.605.1021-605.1026; by each other merging entity in accordance with the laws of its jurisdiction; and by each member of such limited liability company who as a result of the merger will have interest holder liability under s.605.1023(1)(b).



**FOURTH:**  Please check one of the boxes that apply to surviving entity: (if applicable)

☑  This entity exists before the merger and is a domestic filing entity, the amendment, if any to its public organic record are attached.

☐  This entity is created by the merger and is a domestic filing entity, the public organic record is attached.

☐  This entity is created by the merger and is a domestic limited liability limited partnership or a domestic limited liability partnership, its statement of qualification is attached.

☐  This entity is a foreign entity that does not have a certificate of authority to transact business in this state. The mailing address to which the department may send any process served pursuant to s. 605.0117 and Chapter 48, Florida Statutes is:

_____

_____

_____

**FIFTH:** This entity agrees to pay any members with appraisal rights the amount, to which members are entitled under ss.605.1006 and 605.1061-605.1072, F.S.

**SIXTH:**  If other than the date of filing, the delayed effective date of the merger, which cannot be prior to nor more than 90 days after the date this document is filed by the Florida Department of State:

_____

**Note:**  If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

**SEVENTH:**  Signature(s) for Each Party:

| Name of Entity/Organization: | Signature(s): | Typed or Printed Name of Individual: |
|---|---|---|
| Ermitage Once LLC | | Ranee Bartolacci ( NY) |
| Ermitage One LLC | | Ranee Bartolacci (FL) |

Corporations:                     Chairman, Vice Chairman, President or Officer
                                          *(If no directors selected, signature of incorporator.)*
General partnerships:          Signature of a general partner or authorized person
Florida Limited Partnerships:  Signatures of all general partners
Non-Florida Limited Partnerships:  Signature of a general partner
Limited Liability Companies:   Signature of an authorized person

| **Fees:** | For each Limited Liability Company: | $25.00 | For each Corporation: | $35.00 |
|---|---|---|---|---|
| | For each Limited Partnership: | $52.50 | For each General Partnership: | $25.00 |
| | For each Other Business Entity: | $25.00 | **Certified Copy (optional):** | $30.00 |

# **Exhibit D**

## SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

32ND FLOOR

1301 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10019-6023

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

———————

| | | |
|---|---|---|
| SUITE 5100 | SUITE 1400 | SUITE 3800 |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

MARK HATCH-MILLER
DIRECT DIAL (212) 336-8332

E-MAIL mhatch-miller@susmangodfrey.com

June 15, 2021

VIA ELECTRONIC MAIL

Ranee Bartolacci Meir
40 Meadow Lane
Southampton, NY 11968

Re:  Judgment Enforcement Discovery for Nir Meir, Ranee Meir, and Related Entities; State of New York, New York County, *YH Lex Estates LLC v. HFZ Capital Group LLC, Ziel Feldman, and Nir Mier*, Index No. 655980/2020

To Whom it May Concern:

I write on behalf of my client, YH Lex Estates LLC and other commonly-owned entities. The Restraining Notice and discovery requests attached to this letter served under CPLR 5222 and CPLR 5224 relates to a judgment that has been entered against Nir Meir in the Supreme Court of the State of New York, New York County, *YH Lex Estates LLC v. HFZ Capital Group LLC, Ziel Feldman, and Nir Mier*, Index No. 655980/2020 in favor of YH Lex Estates LLC. The Clerk of the Court has recently entered judgment against Mr. Meir for the full amount of liability at issue in the proceeding in favor of YH Lex Estates for over $18 million of loans which Mr. Meir had absolutely and unconditionally guaranteed. We have reason to believe that you are in possession of information about Mr. Meir as the judgment debtor that will assist YH Lex Estates LLC in collecting its judgment against Mr. Meir. I ask that you comply with Restraining Notice and discovery regarding the judgment that has been entered against Mr. Meir.

Ranee Bartolacci Meir
June 15, 2021
Page 2

Sincerely,


SUSMAN GODFREY L.L.P.



*/s/ Mark H. Hatch-Miller*
Mark Hatch-Miller, Partner

CC: Andrew Heymann (via email)



Enclosures:

- Restraining Notice to Ranee Bartolacci Meir
- Judgment Enforcement Information Subpoena to Ranee Bartolacci Meir
- Judgment Enforcement Subpoena Duces Tecum to Ranee Bartolacci Meir

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

YH LEX ESTATES LLC,

                    Plaintiff,

          - against -

H F Z CAPITAL GROUP LLC, ZIEL FELDMAN and
NIR MEIR,

                    Defendants.

Index No.: 655980/2020

**PLAINTIFF/JUDGMENT-CREDITOR YH LEX ESTATES LLC'S CPLR 5224(a)(3) JUDGMENT ENFORCEMENT INFORMATION SUBPOENA TO RANEE BARTOLACCI MEIR**

TO:    Ranee Bartolacci Meir
       40 Meadow Lane
       Southampton, NY 11968

WHEREAS in the above-captioned action between the parties listed above, a Judgement was entered on June 15, 2021 in favor of Plaintiff/Judgment-Creditor YH Lex Estates LLC and against Defendant/Judgment-Creditor Nir Meir in the amount of $19,742,959.81 plus post-judgment interest at the rate of 9%.

NOW, THEREFORE, WE COMMAND YOU, pursuant to CPLR 5224(a)(3), to answer in writing under oath, separately and fully, each question in Exhibit A to this Subpoena, each answer referring to the question to which it corresponds, and that you return the answers within seven days after your receipt of this Subpoena to Plaintiff/Judgment-Creditor's counsel.

Dated: New York, New York
          June 15, 2021

**SUSMAN GODFREY L.L.P.**

*/s/ Mark H. Hatch-Miller*

Mark H. Hatch-Miller (State Bar No. 4981635)
mhatch-miller@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Armstead Lewis (admitted *pro hac vice*)
alewis@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Plaintiff/Judgment Creditor*

## CERTIFICATION

I HEREBY CERTIFY THAT THIS INFORMATION SUBPOENA COMPLIES WITH RULE 5224 OF THE CIVIL PRACTICE LAW AND RULES AND SECTION 601 OF THE GENERAL BUSINESS LAW THAT I HAVE A REASONABLE BELIEF THAT THE PARTY RECEIVING THIS SUBPOENA HAS IN THEIR POSSESSION INFORMATION ABOUT THE DEBTOR THAT WILL ASSIST THE CREDITOR IN COLLECTING THE JUDGMENT. By signing the certification, the judgment creditor or attorney certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the individual or entity receiving the subpoena has relevant information about the debtor.

*/s/ Mark Hatch-Miller*
Mark Hatch-Miller

## EXHIBIT A

1.     Identify all bank, brokerage, and/or investment accounts you currently hold, whether individually or jointly with other persons or entities, including by listing the bank or institution name, the title of the account, the date opened, its address, its telephone number, and account number(s), and amounts presently on deposit.

_____

_____

2.     Identify any bank, brokerage, and/or investment account which you opened or maintained at any time since May 2017, whether currently closed or not, in your name, or in the name of a trust, corporation, limited liability company or other entity of which you are a shareholder, member, beneficiary or in which you held a beneficial interest, jointly or otherwise, whether under a trade, corporate, company or trust name or in association with others.

_____

_____

3.   Identify any bank, brokerage, and/or investment account since May 2017, whether currently closed or not, in which your name appears or appeared as signatory.

_____

_____

4.   For each bank, brokerage, and/or investment account listed in your response to questions 1, 2 and/or 3 above, state the current balance in, or the current total value of the holdings in, the account as of the close of business on the day before your response to this Subpoena was due, and state the highest end-of-month balance held in any such account since May 2017.

_____

_____

5.   For each bank, brokerage, and/or investment account listed in response to questions 1, 2 and/or 3 above, state: the title of the account, the name and address on the account, the name of the institution that holds the account, the branch address where the account is held, the date the account was opened, the identity and social security or tax identification number of the person(s) who opened the account, the name(s), address(es), and social security number(s) of any and all individuals who were or are authorized signatory(ies) on the account, whether each account is opened or closed, the amount that is now on deposit and/or the value of all securities and/or assets

Case 24-18942-RAM    Doc 53    Filed 12/09/24    Page 34 of 44

held in each account, and if the account is closed, the date of closing and the value of all securities and/or assets in the account as of the date of closing.

_____

_____

6.  Identify any limited or general partnerships, corporations, limited liability companies or other entities in which you held a full or partial legal or beneficial ownership or membership interest, whether individually or jointly with others, or through an entity, company, or other investment vehicle since May 2017.

_____

_____

7.  For each partnership, corporation, limited liability company, or other entity identified in your response to question 6 above, state your ownership percentage, how you acquired your ownership interest, and the estimated value of your interest as of the close of business on the day before your response to this Subpoena was due, or on the date such interest was sold, assigned, or transferred to a third party.

_____

_____

8.  Identify any real property in which you held a full or partial legal or beneficial interest since May 2017, including by address, and including any interest held by you directly or indirectly through a corporation, limited liability company, or other entity.

_____

_____

9.  For all real property identified in your response to question 8 above, state the property's estimated current value as of the close of business on the day before your response to this Subpoena was due, or the sales price if sold, including the value of any personal property sold as part of the transaction.

_____

_____

10. Identify any safe deposit box opened or maintained by you since May 2017. Whether currently closed or not, in which you are a named lessee of the box and/or signatory with respect thereto or have an interest therein under a trade or corporate name, or in association with others.

_____

_____

11. Since May 2017, state whether you have transferred any assets, or caused anyone to transfer assets belonging to you or in which you had an interest, to a trust, corporation or limited liability company, the shares or membership interest of which is owned by or held for the benefit of yourself, family members or friends. If so, identify each such entity by name and account number, the name and location of all trustees, managers, directors, officers, shareholders, members, protectors and beneficiaries thereof, and provide the most recent statement of assets owned, held or deposited with such entity.

_____

_____

12. Since May 2017, state whether your spouse, Nir Meir, has transferred any assets, or caused anyone to transfer assets to you or to a corporation, limited liability company, trust, account, or third party, in which you and/or your family, including your children, had a legal or beneficial interest. If so, identify each such entity by name and account number, the name and location of all trustees, managers, directors, officers, shareholders, members, protectors and beneficiaries thereof, and provide the most recent statement of assets owned, held or deposited with such entity.

_____

_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

YH LEX ESTATES LLC,

                        Plaintiff,

        - against -

H F Z CAPITAL GROUP LLC, ZIEL FELDMAN and
NIR MEIR,

                   Defendants.

Index No.: 655980/2020

**PLAINTIFF/JUDGMENT-CREDITOR YH LEX ESTATES LLC'S CPLR 5224(a)(2) JUDGMENT ENFORCEMENT SUBPOENA DUCES TECUM TO RANEE BARTOLACCI MEIR**

TO:    Ranee Bartolacci Meir
        40 Meadow Lane
        Southampton, NY 11968

WHEREAS in the above-captioned action between the parties listed above, a Judgement was entered on June 15, 2021 in favor of Plaintiff/Judgment-Creditor YH Lex Estates LLC and against Defendant/Judgment-Creditor Nir Meir in the amount of $19,742,959.81 plus post-judgment interest at the rate of 9%.

NOW, THEREFORE, WE COMMAND YOU, pursuant to CPLR 5224(a)(2), that you produce the books and papers described in Exhibit A to this Subpoena for examination at the offices of Plaintiff/Judgment-Creditor's counsel (or electronically) within ten days after your receipt of this Subpoena.

Dated: New York, New York
June 15, 2021

**SUSMAN GODFREY L.L.P.**

*/s/ Mark H. Hatch-Miller*

Mark H. Hatch-Miller (State Bar No. 4981635)
mhatch-miller@susmangodfrey.com
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Armstead Lewis (admitted *pro hac vice*)
alewis@susmangodfrey.com
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Plaintiff/Judgment Creditor*

## CERTIFICATION

I HEREBY CERTIFY THAT THIS INFORMATION SUBPOENA COMPLIES WITH RULE 5224 OF THE CIVIL PRACTICE LAW AND RULES AND SECTION 601 OF THE GENERAL BUSINESS LAW THAT I HAVE A REASONABLE BELIEF THAT THE PARTY RECEIVING THIS SUBPOENA HAS IN THEIR POSSESSION INFORMATION ABOUT THE DEBTOR THAT WILL ASSIST THE CREDITOR IN COLLECTING THE JUDGMENT. By signing the certification, the judgment creditor or attorney certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the individual or entity receiving the subpoena has relevant information about the debtor.

*/s/ Mark Hatch-Miller*

Mark Hatch-Miller

## GENERAL INSTRUCTIONS

1.     In responding to this request, all documents in your possession, custody or control are to be produced. This includes documents in the possession, custody or control of your attorneys or their investigators or any third-party to whom you have surrendered possession, custody or control, or who is acting on your behalf, or who has otherwise obtained possession, custody or control and who, upon your request, would surrender possession, custody or control to you.

2.     Documents should be produced in their full original and unexpurgated form, together with all drafts and non-identical copies of each document. Do not mask any portion of a document; produce the entire document. If no original exists, you should produce appropriate copies and drafts. Documents should be produced as they are kept in the usual course of business and in the same order as they are kept or maintained or, alternatively, the documents should be organized and labeled to correspond with the categories of this document request. All documents are to be produced along with the file folders in which they are kept.

3.     If you have a good faith objection to any part of a request and refuse to produce responsive documents to that part of a request, state your objection and produce responsive documents to the remainder of that request. If you have a good faith objection to the scope or time period of a request and refuse to answer for that scope or time period, state your objection and answer the request for the scope or time period you believe is appropriate (including in your answer a specific statement as to why you believe the scope or time period is inappropriate).

4.     Unless otherwise stated, these requests seek documents and electronically stored information ("ESI") that were generated, received, came into existence or were utilized from the relevant period to the present. All electronically stored documents, including extracted texts, should be produced as multi-page PDF image files with OCR. All meta data shall be preserved in

collection and processing. The load files should contain the following metadata fields as available: (a) To; (b) From; (c) Cc; (d) Bcc; (e) Subject; (f) Author; (g) Title; (h) Date created; (i) Date last modified; (j) File type; (k) File extension; (l) doc begin; (m) doc end; (n) attachment begin; (o) attachment end. All Excel file and PowerPoint files should be produced as native files as well as multi-page PDF image files.

5.      If any document requested herein was formerly in your possession, custody or control and has been lost or destroyed or is no longer in your possession, custody or control, specify the date on which the document was lost or destroyed or possession was transferred, the conditions of and reasons for the unavailability of the documents and the persons responsible for custody of the documents and for transfer or destruction of the documents requested and the identity of the person in whose custody the documents presently reside.

6.      Pursuant to CPLR 3122, if any documents are withheld that appear to be within the category of the documents requested herein, you shall give notice that one or more such documents are being withheld. This notice shall provide the following information as to each such document, (a) the type of document, (b) the general subject matter of the document, (c) the date of the document, and (d) such other information as is sufficient to identify the document.

7.      If originals are unavailable, complete and accurate copies of the items to be produced shall be produced without modification or redaction.

8.      Documents should be produced as they are kept in the regular course of business or should be organized and labeled to correspond to the categories in this request.

9.      "You," and "Your," shall refer to Ranee Bartolacci Meir and her current and former attorneys, investigators, accountants, or other agents.

10.     The terms "and" and "or" should be construed to make the request inclusive rather than exclusive. "All" as well as "each" shall be construed as both all and each.  The singular shall also denote the plural and the plural shall also denote the singular.

11.     The term "concerning" or "concern" means and includes: with respect to, referring to, relating to, regarding, substantiating, purporting, embodying, establishing, identifying, listing, evidencing, comprising, connected with, memorializing, recording, commenting upon, to, from, by, between, among, responding to, showing, describing, analyzing, reflecting, showing, representing or constituting, whether in whole or in part.

12.     The terms "document" and/or "documents" are used in their broadest sense and shall include all documents and things within the scope of CPLR 3120 in your possession, custody or control, or any agents, representatives, attorneys or other persons acting on your behalf. In particular, "document" and/or "documents" shall include all originals, drafts, non-identical copies, notes, telephone records, tape recordings, data in computer-readable form, e-mail messages and other electronic message, and photocopies of such document(s), and without limitation all written, printed, drawn, typed or other text or graphic matter, all mechanical and electronic recordings and transcripts thereof, photographs, computer memory and/or other temporary or permanent recordings of information, and all other tangible preservations of information now or at any time in your possession, custody or control or known to you, including but not limited to, all correspondence, communications, internal communications, agreements, contracts, memoranda, reports, notes, diaries, calendars, appointment books, working papers, worksheets, checks, cancelled checks, drafts, invoices, receipts, bank statements, brokerage statements, account statements, account applications, account agreements, signatory cards, collateral agreements, operating agreements, bylaws, resolutions, shareholder registers, corporate shareholder

3

certificates, wire transfer instructions, confirmations, wire transfer reports, gift tax returns, gifts,

tax returns, real estate records, letters of instruction, memoranda of telephone conversations,

records of meetings or conversations, articles of association, minutes or records of meetings,

telephone bills, internal communications, telegrams, telexes, telefaxes, electronic mail, letters,

data, books, manuals, directives, bulletins, accounts, travel and expense accounts, reports,

vouchers, invoices, statements, appraisals, surveys, calculations, ledgers, journals, books of

account, business records, conferences, conversations or communications of any type.

13.     The term "Person" shall mean and include a natural person, individual, partnership,

firm, corporation, or any kind of business or legal entity, his agents or employees.

14.      The term "relating to" shall be interpreted broadly, to include both explicit and

implicit reference, and shall be construed to mean all of the following, as appropriate: relating to,

pertaining to, referring to, describing, evidencing, constituting, regarding, defining, discussing,

containing, construing, embodying, reflecting, stating, dealing with, prepared in contemplation of,

prepared in connection with, prepared as a result of, or in any way pertaining to that matter

specified in the request.

## **EXHIBIT A**

1. Monthly statements from November 2020 to present for all bank, brokerage, and/or investment accounts you held, or in which you had a full or partial legal or beneficial interest, whether individually or jointly with other persons or entities, or with respect to which you were a signatory, during that period.

2. Documents concerning or relating to any financial instruments, including securities, virtual currencies and virtual currency accounts, promissory notes, and/or contractual rights to payment, in which you held a full or partial legal or beneficial interest from November 3, 2020 to present, but did not hold in a bank, brokerage, or investment account.

3. Documents concerning or relating to any real property in which you held a full or partial legal or beneficial interest from May 2017 to present.

4

4. Documents concerning or relating to any sales, transfers, or encumbrances, between November 3, 2020 and the present, of real property in which you held a full or partial legal or beneficial interest, including for example home sale closing documents, mortgage documents, financial statements, offers for sale, advertisements, contracts for sale, deeds, mortgages, agreements, including financial agreements, assignment agreements, brokerage agreements, and correspondence relating thereto.

5. Documents concerning or relating to appraisals or valuations of any real property in which you held a full or partial legal or beneficial interest from November 3, 2020 to present.

6. Documents concerning or relating to any trusts, partnerships, corporations, limited liability companies, or other entities in which you held a full or partial legal or beneficial ownership interest, or were a trustee, protector, manager, officer or director, whether individually or jointly with others, between November 3, 2020 and the present.

7. Documents concerning or relating to valuations of any partnerships, corporations, limited liability companies, or other entities in which you held a full or partial legal or beneficial ownership interest, whether individually or jointly with others, between November 3, 2020 and the present.

8. Documents concerning or relating to any currencies, including virtual currencies, precious metals, jewels, jewelry, motorized vehicles, fine wine, collectibles, furniture, antiques, or any other valuable personal property or chattels of any kind, you held individually or jointly with others between November 3, 2020 and the present.

9. Documents concerning or relating to any transfers of real property, personal property, currency, or any other asset in which you held full or partial legal or beneficial interests, valued at $10,000 or more, that have occurred since November 3, 2020, including purported transfers of assets or business interests to family members.

10. Monthly credit card statements since November 3, 2020 for any credit or debit card issued to you or to your spouse Nir Meir which you used.

11. All trust documents, including trust agreements and the most recent statement of accounts or assets for any trust established by, or on behalf of you, or at your or Nir Meir's direction in existence since November 3, 2020.

12. Documents concerning or relating to deposits, checks, wire transfers, withdrawals and any other account information identifying the source, recipient, depositor, payor and/or payee of all amounts deposited into or withdrawn from each and every bank account maintained or utilized by you since November 3, 2020.

13. Documents concerning communications from you or to you since November 3, 2020 relating to any loans, investments, transfers of money, deposits of money, and/or payments for goods or services in excess of $10,000.

14. Documents concerning or relating to the establishment of any bank accounts by, on behalf of, or at your or Nir Meir's direction since May 2017.

15. Documents concerning or relating to communications with Nir Meir concerning assets, such as personal property (including currency) and real property, valued at $10,000 or more, since November 3, 2020.