UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 1:24-bk-18942-RAM |
| RANEE A. BARTOLACCI, | Chapter 7 |
| Debtor. _____/ | |

**CREDITOR YH LEX ESTATES, LLC'S SUPPLEMENTAL RESPONSE TO DEBTOR'S OPPOSITION TO MOTION TO EXTEND TIME TO (I) OBJECT TO THE DEBTOR'S CLAIMED EXEMPTIONS; AND (II) FILE A COMPLAINT OBJECTING TO THE DEBTOR'S DISCHARGE AND/OR TO DETERMINE THE DISCHARGEABILITY OF DEBT**

YH Lex Estates, LLC ("YH"), a creditor and party-in-interest in the chapter 7 bankruptcy case of Ranee A. Bartolacci (the "Debtor" or "Ms. Bartolacci"), the above-captioned debtor, by and through its co-counsel, Berger Singerman LLP and Klestadt Winters Jureller Southard & Stevens LLP, files this response ("Response") to the Debtor's Opposition ("Opposition") to YH's motion (the "Motion") for an order, pursuant to 11 U.S.C. §§ 522, 523 and 727 and Bankruptcy Rules 4003, 4004, 4007, and 9006(b), and Local Rules 4003-1, 4004-2, 4007-1 and 9013-1, extending YH's time to: (1) object to the Debtor's claimed exemptions under 11 U.S.C. § 522 for a period of time through and including February 7, 2025; and (2) file a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 and/or to challenge the dischargeability of certain debts under 11 U.S.C. § 523 for a period of time through and including March 9, 2025, and respectfully sets forth and represents as follows:

**PRELIMINARY STATEMENT**

Although YH's Motion requests specific, narrow and limited relief – the same extension of the Discharge Deadline and the Exemption Deadline[1] the Debtor granted the Trustee - the

---

[1] Capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Motion.

Debtor uses her Opposition to YH's Motion as another opportunity to espouse her false narrative of victimhood. But the facts and circumstances supporting "cause" to extend the Discharge Deadline and the Exemption Deadline in favor of YH are quite clear and support the Court granting the Motion.

It has been three and a half months since the Debtor filed her bankruptcy case. In that time, YH filed a proof of claim against the Debtor, appeared at and examined the Debtor at her 341 Meeting held on October 10, 2024. When the Trustee declared at the 341 Meeting that he would be conducting Rule 2004 discovery of the Debtor and invited YH and other creditors to participate, YH immediately joined and offered dates preceding the initial Discharge and Exemption deadlines to take the Debtor's Rule 2004 deposition. Through no fault of YH, and to accommodate the schedules of the Debtor and others, the Rule 2004 deposition could not be scheduled until mid-January – more than a month after the initial Discharge and Exemption Deadlines set in this case.

YH, by and through its counsel, also met with the Trustee to provide him with information about the Debtor and the basis for YH's claim. Within two weeks of the Debtor's 341 Meeting, YH responded to the Debtor's request for a meeting only to be denied an extension of the Discharge and Exemption deadlines because, for punitive reasons, the Debtor did not want to consent to anything YH asked.[2] Within days of the Debtor's denial, YH filed its Motion seeking an extension on the same timeline as the Trustee, so that YH could participate in the Rule 2004 discovery being led by the Trustee and use information obtained in that process, comparing it to pre-petition discovery YH obtained from the Debtor as the Debtor's current financial circumstances suggest a clear departure from the life she led pre-bankruptcy.

---

[2] As will be spelled out in detail in a Complaint to be filed by YH, the Debtor has been actively involved in a years-long judgment evasion fraud scheme with her now estranged husband Nir Meir ("Meir), in which she created more than fifteen bank accounts and moved millions of dollars from jurisdiction-to-jurisdiction one step ahead of YH's collection and judgment enforcement proceedings in New York, Florida, and elsewhere. Her eleventh-hour claim that she is an innocent spouse is, to say the least, and as she well knows, hotly contested.

2

Bartolacci's sworn bankruptcy disclosures paint the picture that she has squandered more than $18 million in less than four years. YH should be entitled to full and complete discovery from the Debtor showing how a person who, since 2021, received no less than $14 million in fraudulent transfers and an additional $4.2 million in loans from her father, is now left with $3.48 in her bank accounts and approximately twenty pieces of jewelry she claims are completely exempt, despite the value of her jewelry, however underestimated, exceeding the Florida exemption limits by at least $35,000 for the jewelry alone. Moreover, the Debtor filed for bankruptcy protection only after she divested herself of almost all the money and assets in her name, while her father funds her lifestyle by paying *some of her creditors* directly and bypassing her bank accounts, and, therefore, the creditors she continues to evade – like YH.

The Debtor's intra-spousal fraud scheme conducted with her now estranged husband is complex, extensive and lasted for several years. The Debtor's bankruptcy filing is simply her latest chapter. The Debtor is neither an innocent spouse nor is she a good faith debtor entitled to a discharge of her debts. Bartolacci's creditors, including YH, should be afforded sufficient opportunity to conduct their due diligence of the Debtor before launching into yet another lawsuit against her. YH's requested extension will not prejudice the Debtor, the Trustee, Bartolacci's other creditors or this Court because YH requested the same extension of time already granted the Trustee on the consent of the Debtor.

Therefore, this Court should find that sufficient cause exists to grant YH an extension of the Discharge Deadline and the Exemption Deadline on the same timeline as the Trustee, but at a minimum, until the Debtor's Rule 2004 deposition is concluded.

### YH'S RESPONSE

1. **Background of the Debtor's Fraud Scheme**

Millionairess-adventurer Ranee Bartolacci is a fraudster.

Among other things, her millionaire father secretly loaned her no less than $4.2 million to assist her in evading the New York judgment entered against her in favor of YH. That judgment held the Debtor, and her entity, Ermitage One LLC ("Ermitage"), liable for receiving fraudulent transfers totaling nearly $13 million from the proceeds of the sale of New York property owned by a separate corporate entity, EAM 40 Meadow Lane LLC, in which the Debtor did not have any ownership interest and is currently in its own chapter 7 bankruptcy in Delaware. Following receipt of the fraudulent transfers and notwithstanding YH's judgment and pending enforcement proceedings in multiple states, the Debtor continued to squander the fraudulent transfers she and Ermitage received to fund her lavish lifestyle and to secret money and assets - placing them further out of the reach of YH and other creditors. When her efforts to evade YH's judgment failed, she filed this sham bankruptcy proceeding.

Bartolacci was Bonnie to Meir's Clyde[3] – until the nearly $13 million that Meir fraudulently conveyed to her ran out. Among other things, she spent millions of dollars on a Miami Beach *rental property*, paying the entire annual rent in a lump sum upfront payment, and made approximately $600,000 of improvements to the rental property, all to evade judgment-creditor YH and dissipate the fraudulently conveyed assets.

Now, in her recently filed Opposition, Bartolacci suddenly claims to not know anything about what her estranged husband did. Indeed, she even claims to be an innocent spouse. Her claim is an offense to truly innocent spouses. In her Opposition, Bartolacci asserts that YH and Bartolacci are somehow on equal footing, having both been defrauded by Meir, and astoundingly,

---

[3] As set forth at length in prior pleadings, Meir is the Debtor's now estranged husband who is currently incarcerated in Riker's Island prison in New York awaiting trial related to an indictment charging him with stealing more than $86 million from investors, subcontractors, and New York City through a series of frauds and schemes that began in 2015. In five separate but related New York State Supreme Court indictments, HFZ Capital LLC, Meir, and others were charged with varying counts of larceny, conspiracy, falsifying business records, tax fraud, money laundering, and more. The indictments are the culmination of a joint investigation by the Manhattan D.A.'s Office's Rackets Bureau and the New York State Police Special Investigations Unit – all of which the indictment claims were spearheaded by one man: Nir Meir.

4

asserts that Bartolacci lacked "any knowledge that her husband allegedly owed YH Lex $20 million at the time" and that "even after that transfer, Meir – not Ms. Bartolacci – continued to control the sale proceeds."[4] *See Opposition* at ¶ 2.

However, the record of all prior proceedings involving YH, Meir and Bartolacci, which date back to 2019, make it very clear, and the record of the future proceeding seeking to block the Debtor's discharge and dischargeability of her debt to YH, will further clarify that Bartolacci had knowledge of YH's nearly $20 million judgment against Meir, that Bartolacci and many of hers and Meir's creditors knew the property sale proceeds were fraudulently transferred to the Debtor and Ermitage, and that there were numerous enforcement proceedings pursued by YH and other creditors in New York, Florida, and other jurisdictions. Yet, Bartolacci continued to spend the property sale proceeds, which were fraudulently transferred to her and Ermitage, and other funds that came into her possession, for years before she filed this bankruptcy case.

The Debtor's use of her Opposition to a procedural motion to claim her narrative first for the Court must be rejected. Not only is the narrative one of fiction, but the Debtor immediately starts off on the wrong foot by concealing from this Court the fact that YH has been coordinating directly with the Debtor, the Trustee and other creditors to participate in the Debtor's Rule 2004 deposition, which is scheduled to proceed in mid-January.

2. **Cause Exists to Grant YH an Extension of the Discharge Deadline and the Exemption Deadline**

Despite Bartolacci's contentions, YH has and can show the Court that "cause" exists to grant it the same extension of the Discharge Deadline and the Exemption Deadline that the Debtor *consensually* granted the Trustee.

The court may *for cause* extend the time to object to discharge upon consideration of the

---

[4] The Debtor and Ermitage received two different transfers directly from the title company upon the closing of the sale of the New York property. Bartolacci received $10,587,387.52 and Ermitage separately received an additional $2,000,000.

following factors: (1) whether the debtor refused *in bad faith* to cooperate with the creditor; (2) whether the creditor had sufficient notice of the deadline *and information to file an objection*; (3) whether proceedings in another forum will result in collateral estoppel on a relevant issue; (4) whether the creditor exercised diligence; (5) whether the case is complex; (6) whether the extension will prejudice the debtor; and (7) whether the length of the requested delay will affect court administration." *In re Yormak*, 2023 Bankr. LEXIS 680, *13, 14 (Bankr. M.D. Fla. 2023) (*emphasis supplied*) (denying creditor's request for extension but only after granting two initial extensions, allowing the deadline to pass before requesting a third extension without articulating a basis for creditor's request for an indefinite extension); *In re Pizzuti*, 2011 Bankr. LEXIS 28, *5 (Bankr. M.D. Fla. Jan. 6, 2011) (denying reconsideration of a motion granting the extension of the discharge objection deadline for several creditors because, *inter alia*, the debtor was unable to answer questions related to various investment companies at the 341 meeting and several motions to conduct Rule 2004 examinations of the debtors and others had been filed); *Marshall v. Demos (In re Demos)*, 57 F.2d 1037, 1039-40 (11th Cir. 1995) (granting the motion of the trustee and several parties in interest where there were numerous parties and attorneys who wished to attend the 2004 examination of the debtor, which would be after the deadline for exemptions and the deadline for determining dischargeability and objecting to discharge)

Here, most factors under Bankruptcy Rule 4004(b)(1) exist to provide the Court with sufficient grounds that "cause" exists to grant YH's Motion to extend the Discharge and Exemption Deadlines.

a. **The Debtor Denied YH's Extension Request in Bad Faith**

As set forth at length herein, the Debtor did not act in good faith in denying YH an extension while it granted the same requested extension to the Trustee. The Debtor's refusal to extend YH's deadlines was punitive.

Indeed, in her Opposition, the Debtor shockingly refers to YH's collection efforts as "threats" to recover his investment and knowingly misrepresents to this Court that "Harlap knows she [Bartolacci] had nothing to do with Meir's fraud." To the contrary, the record makes clear that Bartolacci was Meir's knowing and willing co-conspirator and YH's efforts to hold the Debtor accountable for her fraud, which has significantly harmed YH, is a valid and legitimate enforcement of its claim. It is worth noting that it appears YH is not the only creditor defrauded and harmed by Bartolacci and is also not the only creditor that sued her to recover those monies to satisfy creditor claims. The Debtor's (mis)characterization of YH and its principal is simply another chapter in her fictional re-telling of the facts.

### b. *YH's Requested Extension Will Not Prejudice the Debtor nor Will the Delay Affect Court Administration*

The Debtor's case is already proceeding on YH's requested timeline as established by the extension consensually granted the Trustee. Granting YH the same extension would not cause prejudice to any parties in this case. Bartolacci's Opposition also blatantly disregards that YH is already involved in the Rule 2004 discovery commenced by the Trustee, which will not be completed for quite some time and at the very least not before the Debtor's Rule 2004 deposition scheduled for January 13, 2025.

YH's Motion was its first request to this Court for an extension of the Discharge Deadline and the Exemption Deadline. The Debtor has already agreed to the same extension for the Trustee and is not expected to sit for her Rule 2004 deposition until January 13, 2025, through which the Trustee and her creditors will seek to ascertain whether her bankruptcy disclosures accord with her pre-petition financial records and testimony. Therefore, granting YH the same extension consensually granted to the Trustee will not harm the Debtor or other creditors, nor will it delay the Debtor's case. In fact, a more coordinated effort between and among the Trustee and her creditors will likely make these proceedings more cost effective for all parties.

    c. ***The Debtor's Fraud is Complex and Creditors Deserve an Opportunity to Take Discovery in her Bankruptcy Case***

As set forth herein and as numerous pleadings in prior proceedings make clear, this case is incredibly complex. The web of fraud and deceit laid by Meir *and the Debtor, as his co-conspirator*, is anything but simple. Undoubtedly, it is worth a short extension in the first few months following the Debtor's 341 examination for creditors to assess the veracity of the Debtor's current financial circumstances and disclosures in her bankruptcy case.

Understanding the complexity of the Debtor's case and to protect its rights to assert its claims against the Debtor, if any, after the benefit of engaging in Rule 2004 discovery, YH requested an extension of the Discharge Deadline and the Exemption Deadline from the Debtor nearly two months prior to the initial Discharge and Exemption Deadline. Although the Debtor granted the Trustee an extension of time to file his objection to discharge and the Debtor's claimed exemptions, the Debtor outright rejected a similar request from YH, *without basis*. The Debtor's rejection was a clear attempt to single out and punish YH solely for seeking to enforce its judgment and to recover the fraudulent transfers received by the Debtor and Ermitage.

    d. ***YH has Diligently Pursued its Claims Against the Debtor***

The Debtor also falsely claims that "[i]n the 90 days since Ms. Bartolacci's August 30 petition date, YH Lex has done nothing to advance or pursue any possible claim." *See Opposition* at ¶ 5. Although motions for extension of these deadlines *may* be denied for the creditor's lack of diligence, such a finding does not exist here. The Debtor fails to acknowledge to this Court that: (i) YH is the *only creditor* who has filed a proof of claim in this case: (ii) YH appeared at the Debtor's 341 Meeting and examined the Debtor on the record; (iii) YH met with both the Debtor's counsel and with the Trustee's counsel regarding this matter and the extensive background that led to the Debtor filing for bankruptcy; (iv) since the October 28, 2024 discussion with the Debtor referenced in the Opposition, immediately engaged with counsel for the Debtor, the Trustee and

8

other creditors to be involved in the Debtor's Rule 2004 deposition; and (v) on December 18, 2024, YH served a *Cross-Notice of Rule 2004 Examination Duces Decum* [ECF No. 58] on the Debtor.

The Debtor filed her case on August 30, 2024. At the Debtor's 341 Meeting held on October 10, 2024, the Trustee declared on the record for all parties that he would be conducting discovery of the Debtor under Rule 2004 and invited the creditors, including YH, to participate. Almost immediately after the 341 Meeting, the Trustee, the Debtor, YH and other creditors began coordinating their schedules and availability to set a time for a deposition of the Debtor under Rule 2004. Due to scheduling conflicts among several parties, not YH who remained available to participate, the Debtor's deposition is not scheduled to proceed until January 13, 205 – more than a month after the initial Discharge Deadline and Exemption Deadline.[5] YH was prepared to schedule the deposition for a date prior to the initial Discharge and Exemption Deadlines, but it agreed to a later date at the request of other parties, *including the Debtor*, who was not available to sit for the deposition until mid-January. For the Debtor to assert otherwise, is a misrepresentation to this Court, which YH's initial response to the Debtor's Opposition, filed on December 4, 2024 [ECF Nos. 42 & 43], seeks to correct.

YH's ability to participate in the Debtor's Rule 2004 discovery and to depose her specifically on the sworn disclosures she made on her bankruptcy schedules to compare that to any

---

[5] Courts in this and other districts have denied extensions of discharge and exemption deadlines where, *unlike here*, Rule 2004 discovery was pending when the debtor's discharge and exemption deadlines would expire before discovery was concluded. In re Mendelsohn, 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996) (no cause where creditor failed to seek a Rule 2004 examination and moved for an extension of time on last day to file objections to discharge); In re Leary, 185 B.R. 405, 406 (Bankr. D. Mass. 1995) (cause absent where creditor waited until ten (10) days prior to expiration of the deadline to pursue requested Rule 2004 examinations); Santana Olmo v. Quinones Rivera (In re Quinones Rivera), 184 B.R. 178, 183 (D.P.R. 1995) (request for extension is inappropriate where movant made "no attempts at discovery, until his motion for extension of the deadline for objecting to discharge. . . ."); In re Farhid, 171 B.R. 94, 97 (N.D. Cal. 1994) (cause absent where creditor failed to attend section 341 [**8] meeting of creditors or request any Rule 2004 examination); In re Dekelata, 149 B.R. 115, 117 (Bankr. E.D.Mich. 1993) (no cause where request for Rule 2004 examination was made for the first time 11 days prior to expiration of the deadline); Littell v. Littell (In re Littell), 58 B.R. 937, 938 (Bankr.S.D.Tex. 1986) (no cause where creditor failed to conduct discovery and motion for extension of time was filed day before deadline was to expire)."

9

pre-petition discovery YH obtained from the Debtor to ensure consistency and prior to objecting to the Debtor's discharge, Dischargeability or exemptions is critical to its case.

**WHEREFORE**, YH respectfully requests that the Court overrule the Debtor's Opposition and grant YH an extension of the Exemption Deadline and the Discharge Deadline, to accord with the same dates granted the Trustee, extending the Exemption Deadline to February 7, 2025, and the Discharge Deadline to March 9, 2025.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF Service upon all parties listed on the Electronic Service List on this 18th day of December 2024, including Luis Salazar, Esq., Debtor's Counsel; Robert A Angueira, Trustee, and the AUST; and via U.S. Mail upon the Debtor, Ranee A. Bartolacci at 501 NE 31st Street, Unit 1506, Miami, Florida 33137.

I HEREBY CERTIFY that I am admitted to the Bar for the District Court in the Southern District of Florida and am in compliance with the additional qualifications to practice before this Court as set forth in Local Rule 2090-1(A).

Dated: December 18, 2024

Respectfully submitted,

Kathleen Aiello, Esq. (admitted *pro hac vice*)
Tracy Klestadt, Esq. (admitted *pro hac vice*)
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Email: kaiello@klestadt.com
         tklestadt@klestadt.com

-and –

BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: */s/ Jordi Guso*
    Jordi Guso
    Florida Bar No. 0863580
    jguso@bergersingerman.com

*Co-Counsel for YH Lex Estates, LL*

10

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Robert A Angueira**    trustee@rabankruptcy.com, fl79@ecfcbis.com;raa@trustesolutions.net;tassistant@rabankruptcy.com;richard@rabankruptcy.com;lillian@rabankruptcy.com
- **Nestor C Bustamante**    nbustamante@cozen.com, nestor-bustamante-2974@ecf.pacerpro.com
- **Heidi A Feinman**    Heidi.A.Feinman@usdoj.gov
- **Yanay Galban**    yanay@rabankruptcy.com, robert@rabankruptcy.com
- **Jordi Guso**    jguso@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.courtdrive.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Luis Salazar**    Luis@Salazar.Law, luis-salazar-4791@ecf.pacerpro.com;Ceide@salazar.law;Lee-Sin@Salazar.Law;Suarez@Salazar.Law;Lorenzo@Salazar.Law;MSalazar@Salazar.Law